**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CASSANDRA R. WILTZ,**

      **Plaintiff,**

                                   **Civil Action 2:09-cv-00592**
**v.**                                  **Judge George C. Smith**
                                     **Magistrate Judge E. A. Preston Deavers**

**STATE OF NEW JERSEY, *et al.*,**

      **Defendants.**

**OPINION AND ORDER**

Plaintiff, Cassandra R. Wiltz, brings this action against Defendants claiming violations of the Health Insurance Portability and Accountability Act ("HIPAA") as well as other state and federal law.  This matter is before the Court for consideration of Defendants' various Motions to Dismiss, as well as Plaintiff's Motion for Leave to Amend the Complaint and File the Second Amended Complaint.[1]  (*See* Docs. 11, 12, 32, 56, 59, 60, 77.)  For the reasons that follow, Defendants' Motions to Dismiss are **GRANTED**.  Additionally, Plaintiff's Motion for Leave to Amend the Complaint is **DENIED**.

**I.  BACKGROUND**

A.  Plaintiff's Complaint

Plaintiff filed her First Amended Complaint (hereinafter "the Complaint") with the Court

---

[1] In addition to multiple motions to dismiss, the parties have filed numerous responses and replies in this case.  For clarity purposes, the Court will cite to the document numbers within the record for all filings.

on August 10, 2009.  In the Complaint, Plaintiff names seventy-seven Defendants.[2]  (Compl. ¶¶ 4–80.)  Defendants include, but are not limited to, the State of New Jersey; New Jersey government employees; health care providers, hospitals, and medical centers; individual doctors and nurses; attorneys and law firms; and multiple New Jersey county prosecutor's offices.  (*Id.*)  All Defendants reside or do business in the state of New Jersey.  (*Id.*)  Plaintiff's allegations arise out of a civil complaint she filed with the Somerset County (NJ) Superior Court in 2007.  (Doc. 5 ¶ 81.)  This litigation involved Plaintiff's involuntary commitment to a New Jersey mental health facility in 2005.  (*Id.*)

In her current Complaint, the bulk of Plaintiff's contentions involve the treatment of her medical records relevant to her 2005 commitment and Superior Court case.  (*See generally* Doc. 5.)  According to Plaintiff, in response to repeated requests that she made between 2006 to 2009, several Defendants failed to provide her with her complete medical files.  (*See, e.g.*, Doc. 5 ¶¶ 82, 85.)  Additionally, Plaintiff contends that Defendants improperly exchanged; disclosed; offered to sell; falsified; altered; and fabricated Plaintiff's medical records and documents.  (*See, e.g.*, Doc. 5 ¶ 82–121.)  Plaintiff also maintains that Defendants engaged in misconduct concerning the production of her commitment papers.  Plaintiff asserts that several Defendants failed to provide Plaintiff with a copy of her commitment papers; exchanged and disclosed the commitment papers with other Defendants; and made false representation to the Somerset County Superior Court regarding the papers.  (Doc. 5 ¶¶ 122–142.)

Plaintiff also asserts that certain Defendants, primarily employees of the court, acted to

---

[2] Plaintiff rarely attributes specific conduct to an individual Defendant and generally accuses all Defendants with the tortious conduct she alleges.

obstruct the lawsuit Plaintiff had filed in Somerset County Superior Court.  Plaintiff maintains that Defendants denied her due process and equal protection of the law by interfering with her ability to respond to defense motions, as well as interfering with the court's processing of her filing fees.  (Doc. 5 ¶ 188.)  Plaintiff further contends that Defendants destroyed her money orders to the court, concealed documents she had filed, altered the court's records, and interfered with her appeal of the court's decision.[3]  (*See, e.g.*, Doc. 5 ¶¶ 194–95, 272.)  Additionally, Plaintiff alleges that Defendants participated in *ex parte* proceedings in order to discuss the dismissal motion filed against Plaintiff.  (Doc. 5 ¶ 249.)  Plaintiff, who is an African American, maintains that Defendants took such actions because of her race in violation of state and federal laws including 42 U.S.C. § 1983.  (Doc. 5 ¶¶ 183, 210–17.)

Plaintiff's Complaint also raises claims involving New Jersey government employees' failure to investigate her criminal complaints.  Plaintiff states that, beginning in 2007, she filed criminal complaints against multiple Defendants involved in this case.  (*See, e.g.*, Doc 5 ¶ 259.)  Plaintiff contends that Defendants requested employees of the Somerset County and Mercy County Prosecutors' Offices to not undertake criminal investigations based on Plaintiff's accusations against various Defendants.   (Doc. 5 ¶¶ 259–65.)

Plaintiff asserts that Defendants' conduct has caused her a variety of injuries and that she is entitled to damages.  Specifically, Plaintiff contends that Defendants actions violated HIPAA and New Jersey State law; impaired the availability of Plaintiff's medical records for pending and future court proceedings; and interfered with Plaintiff's ability to obtain medical care.  (Doc. 5

---

[3] Plaintiff also briefly mentions that she filed a second civil action in the Somerset County Superior Court.  (*See* Doc. 5 ¶¶ 276–77.)  Plaintiff contends that Defendants repeated some of the improper actions that caused the Superior Court to dismiss her first action.  (Doc. 5 ¶¶ 284–90.)

¶¶ 163–71, 175.)  Plaintiff also maintains that Defendants' conduct obstructed her pending Superior Court cases.  (Doc. 5 ¶¶ 228–29, 317–18.)[4]

B. Defendants' Motions to Dismiss

Sixty-five of the seventy-seven Defendants have filed Motions to Dismiss Plaintiff's Complaint.[5]  (*See* Docs. 11, 12, 32, 56, 59, 60.)  Although Defendants raise other contentions, all Defendants assert that the Court lacks personal jurisdiction over Defendants and should therefore dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2).[6]  Defendants maintain that they reside or do business in New Jersey, that Plaintiff's Complaint arises out of New Jersey litigation, that Plaintiff was a New Jersey resident when she filed her 2007 civil action in New Jersey,[7] and that Plaintiff cannot meet either Ohio's Long-Arm Statute or the Due Process requirements for personal jurisdiction.  (*See, e.g.*, Doc. 12 at 2–7.)  Several Defendants also contend that any incidental communications that occurred via mail, telephone, or email between Defendants in New Jersey and Plaintiff in Ohio are not enough to establish personal jurisdiction. (Docs. 11-1 at 12, 56 at 12–13.)

---

[4] The Court does not submit that the above synopsis is a complete account of all the assertions within Plaintiff's 143-page Complaint.  Nevertheless, the Court has laid out the relevant contentions necessary to address the issues that Defendants' Motions to Dismiss raise.

[5] The record reflects that Defendants Patricia Spencer, Arthur Koppisch, Gerald Fenster, Farkas and Donahue, Delores Smalls, Basma Merhi, Harshit Rao, Rameck Hunt, Peter J. Waldman, Michael Gould, Richard Berger, and Laura Giroski have not filed motions to dismiss.

[6] Because the Court finds that it lacks personal jurisdiction, it is unnecessary to analyze Defendants' other bases for dismissal.

[7] Defendants attached the caption of Plaintiff's 2007 civil complaint in the Superior Court of New Jersey.  (Doc. 12-1 at 3.)  In the caption, Plaintiff provides a New Jersey mailing address. (*Id.*)  Multiple Defendants assert that August 2008 was the first time Plaintiff indicated that she lived in Ohio and not New Jersey.  (Doc. 82 at 3.)

C. <u>Plaintiff's Responses and Motion to Amend</u>

In her Responses, Plaintiff contends that the Court does have jurisdiction. Plaintiff asserts that she is a resident of Ohio and was a resident "at all times that are relevant to my complaint."[8] (Doc. 76 at 5.) She maintains that Defendants caused tortious injury in Ohio by acts committed outside Ohio, and that Defendants committed unlawful acts with the knowledge that Defendant was in Ohio. (*Id.*) At other points in her Responses Plaintiff also contends that elements of Defendants' improper actions and crimes took place in Ohio. (Doc. 76 at 32, 36.) Specifically, Plaintiff states that Defendants made a variety of communications to Ohio including when they refused her record requests; sent incomplete and altered documents; and made false representations to her regarding her medical records. (Doc. 76 at 37–38.) Plaintiff alleges that Defendants performed these acts by communicating through mail, email, and telephone calls directed to Plaintiff in Ohio. (*Id.*) Plaintiff states that a few Defendants attempted to sell her own medical records to her, while she was in Ohio. (Doc. 83 at 37.) Plaintiff also indicates that her own actions, such as sending money orders from Ohio, link Defendants to Ohio. (*See, e.g.*, Doc. 83 at 36.) Plaintiff further maintains that a reasonable person in Defendants' position would have foreseen her instituting litigation in Ohio because she was a resident in Ohio. (Doc. 76 at 41.)

In addition to responding to Defendants' Motions to Dismiss, Plaintiff has also filed a Motion for Leave to Amend the Complaint and to File the Second Amended Complaint (Doc. 77). In the Proposed Second Amended Complaint, which Plaintiff attached to her Motion,

_____

[8] Plaintiff does not indicate when exactly she moved to Ohio, but at one point in her Responses, Plaintiff implies she was a resident of Ohio beginning in 2008. (Doc. 83 at 5.)

Plaintiff adjusts the first and third paragraphs in an attempt to cure any deficiencies in jurisdiction.

(Doc. 77-3 ¶¶ 1, 3.)  Plaintiff supplements the first paragraph by adding:

> This Court has personal jurisdiction over defendants,  pursuant to Ohio Revised Code 2307.382(A)(3), (A)(6), and (A)(7), and Civ. R. 4.3(A), (A)(9), and (A)(10).  The defendants purposefully availed themselves of the privilege of acting in Ohio and causing consequences in Ohio, the causes of action in this complaint 'arise from' and 'are related to' the defendants' activities in Ohio, the acts of the defendants and consequences caused by the defendants have a substantial enough connection to Ohio to make the exercise of jurisdiction over the defendants reasonable, and the defendants had minimum contact in Ohio (so that the exercise of personal jurisdiction would not result in denials of due process).

(Doc. 77-3 ¶ 1.)  Furthermore, Plaintiff adds the following language to her third paragraph:

> The plaintiff was a resident of Ohio, at all times relevant to this complaint.  The defendants were aware that the plaintiff was a resident of Ohio and communications/contacts between the plaintiff and the defendants (that are discussed throughout the complaint) took place between New Jersey (where defendants reside) and Ohio (where the plaintiff resides), via phone, FAX, email, and mail.

(Doc. 77-3 ¶ 3.)

## II.  STANDARD

When confronted with a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing the existence of jurisdiction."  *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)).  When the Court resolves a Rule 12(b)(2) motion based on "written submission and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings*

*Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen v. Matthews*, 935 F.2d 1454,

1458 (6th Cir. 1991)).  Under such circumstances "the pleadings and affidavits submitted must be

viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the

controverting assertions of the party seeking dismissal.'" *Id.* (quoting *Theunissen v. Matthews*,

935 F.2d at 1459).

Although Plaintiff's *prima facie* burden is relatively slight, the Court must still find that

"'[P]laintiff has set forth specific facts that support a finding of jurisdiction in order to deny the

motion to dismiss.'" *Palnik v. Westlake Entm't, Inc.*, 344 Fed. Appx. 249, 251 (6th Cir. 2009)

(quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). Thus, "it

remains the plaintiff's burden and the complaint must have 'established with reasonable

particularity' those specific facts that support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo

Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  Consequently, the rules are designed in

part to protect potential defendants for a "plaintiff's bald allegation of jurisdictional facts." *Serras

v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

When the Court's jurisdiction over a case arises from a federal question,[9] "personal

jurisdiction over a defendant exists if the defendant is amenable to service of process under the

[forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the

defendant[ ] due process." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477

(6th Cir. 2003) (internal quotations omitted).  As the United States Court of Appeals for the Sixth

Circuit has noted, "Ohio's long-arm statute is not coterminous with federal constitutional limits."

---

[9] Plaintiff states that the Court has both federal question and diversity jurisdiction in this case.  Defendants have not contested the Court's subject matter jurisdiction.

7

*Estate of Thompson*, 545 F.3d at 361 (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)).  Thus, for the Court to have personal jurisdiction, it must find that the requirements of both Ohio's long-arm statute and constitutional due process are met.  *Id.*

### III.  PERSONAL JURISDICTION

A.  <u>Ohio's Long-Arm Statute</u>

Under Ohio law, the Court can exercise two types of personal jurisdiction:

"Jurisdiction may be found to exist either generally, in cases in which a defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum."

*Id.* (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996)).

In this case, Plaintiff contends that the Court has specific jurisdiction under Ohio Revised Code § 2307.382.  The relevant provisions provide:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
. . .
(3) Causing tortious injury by an act or omission in this state
. . .
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

Ohio Rev. Code § 2307.382(A).

Of all of these provisions, only Ohio Revised Code § 2307.382(A)(6) has any arguable application to Plaintiff's Complaint.  As this Court has recognized, "subsection (A)(6) applies

8

when an out-of-state defendant, acting directly or through an agent, causes a tortious injury in Ohio by an act committed outside the state, provided that (1) the out-of-state act was committed with the purpose of inflicting an injury and (2) the injury was reasonably expected to occur." *Coleman v. Parra*, 163 F. Supp. 2d 876, 889 (S.D. Ohio 2000) (citing *Clark v. Connor*, 82 Ohio St. 3d 309 (1998)).

Construing Plaintiff's *pro se* filings liberally, as the Court must, it appears that Plaintiff has met her *prima facie* burden for at least some Defendants with regard to jurisdiction under Ohio's long-arm statute.[10]  Plaintiff's Complaint asserts that Defendants caused Plaintiff tortious injury by their actions involving Plaintiff's medical records and pending New Jersey civil litigation.  Plaintiff contends that she suffered multiple injuries from this conduct including severe emotional distress. *(See, e.g.*, Doc. 5 ¶ 328–29.)  Plaintiff further alleges that Defendants intended to cause her injury. (Doc. 5 ¶ 313.)  Finally, in her responses and Proposed Amended Complaint, Plaintiff maintains that Plaintiff's were aware that Plaintiff was a resident of Ohio at the times relevant to her Complaint.  (Doc. 77-3 ¶ 3.)  Although this bare assertion of fact would likely not stand on its own, when combined with the numerous communications that Plaintiff asserts took place between Defendants in New Jersey and Plaintiff in Ohio, including by mail, the Court finds that many Defendants fall under the confines of Ohio Revised Code § 2307.382(A)(6).

B.  Due Process
_____

[10] As discussed below, the Court ultimately finds that Plaintiff has failed satisfy the due process requirement for personal jurisdiction for *all* of the sixty-five Defendants moving for dismissal for lack of personal jurisdiction. Plaintiff must meet both the requirements of Ohio's long-arm statute and due process for the Court to exercise personal jurisdiction.  Because the Court finds that at least some of Defendants appear to be subject to Ohio's long-arm statute, the Court finds it unnecessary to engage in further analysis of this issue.  Rather, the Court will move to its due process analysis.

A plaintiff satisfies the due process requirement when "[p]ersonal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Air Prods. & Controls*, 503 F.3d at 549 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)).  Much like personal jurisdiction under Ohio law, personal jurisdiction under the due process component of the Constitution may result from either specific or general contacts with the forum.  *Id.* at 549–50.

In this case, Plaintiff maintains that the Court has specific jurisdiction over Defendants. The United States Court of Appeals for the Sixth Circuit has set forth a three-part test for determining whether the Court may exercise personal jurisdiction:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Id.* at 550 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  Plaintiff must "establish all three prongs of the *Southern Machine* test for specific jurisdiction."  *Intera Corp. v. Henderson*, 428 F.3d 605, 619 (6th Cir. 2005).

1. Purposeful Availment

For the Court to exercise personal jurisdiction over Defendants, they "must have purposefully availed [themselves] of 'the privilege of acting in the forum state or causing a consequence in the forum state.'" *Air Prods. & Controls*, 503 F.3d at 551 (quoting *Southern Mach.*, 401 F.2d at 381).  The "'purposeful availment' requirement ensures that a defendant will

not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

contacts, or of the unilateral activity of another party or a third person.'" *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted).  For jurisdiction to be proper,

the relevant contact must "result from actions by the defendant *himself* that create a 'substantial

connection' with the forum State." *Id.* (citation omitted and emphasis in original).  Although

physical presence in a forum state is not required for specific jurisdiction, a plaintiff's unilateral

choice to move to a forum, and communications resulting from that choice, is not enough to

establish jurisdiction.  *See Air Prods. & Controls*, 503 F.3d at 551; *Harris v. Lloyds TSB Bank,*

*PLC*, 281 Fed. Appx. 489, 495 (6th Cir. 2008) (citing *Int'l Techs. Consultants v. Euroglas*, 107

F.3d 386, 395 (6th Cir. 1997)).

      The United States Court of Appeals for the Sixth Circuit has addressed when a

defendant's telephone, email, facsimile, or mail correspondences to a plaintiff's forum choice

constitute purposeful availment.  *See, e.g.*, *Air Prods. & Controls*, 503 F.3d at 551 (holding that

numerous contacts, which the defendants initiated, involving purchase orders helped satisfy the

purposeful availment prong); *Harris*, 281 Fed. Appx. at 495 (holding that a defendant's

communication in response to communication that the plaintiff initiated did not constitute

purposeful availment).  The Sixth Circuit has made clear that "[a] numerical count of the calls and

letters has no talismanic significance: The quality of the contacts as demonstrating purposeful

availment is the issue, not their number or their status as pre- or post-agreement

communications." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)

(internal quotation omitted).  Additionally, the Sixth Circuit "has found that contacts lack quality

when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral

activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.'" *Air Prods. & Controls*, 503 F.3d at 552 (quoting *LAK*, 885 F.2d at 1301).

Finally, in determining whether a defendant purposefully availed itself to the subject forum, the Court must consider the effects of Defendants' actions. Specifically, the Supreme Court has held that when intentional tortious conduct is aimed at a forum and "the brunt of the harm" is suffered in that forum, the personal jurisdiction requirement is met. *Calder v. Jones*, 465 U.S. 783, 789 (1984). Likewise, the Sixth Circuit has held "that when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state." *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001) (finding personal jurisdiction present when the defendant was accused of directing fraudulent contacts at Tennessee). Nevertheless, "[t]he Sixth Circuit, as well as other circuits, have narrowed the application of the Calder 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls*, 503 F.3d at 552. Consequently, the Court must "evaluate whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises." *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 113 n. 1 (6th Cir. 2005).

In this case, the Court finds that the vast majority of the sixty-five Defendants moving to

dismiss have not purposely availed themselves of the privilege of acting in Ohio.[11]  As Plaintiff's

Complaint indicates, all Defendants are either residents or do business in New Jersey.  (Doc. 5

¶¶ 4–80.)  Plaintiff provides no evidence that any of these Defendants resides or does business in

Ohio.  Rather, in her Responses, Plaintiff maintains that Defendants caused injury in Ohio,

knowing she was a resident of Ohio, and that elements of Defendants' crimes took place in Ohio.

(*See, e.g.*, Doc. 76 at 5.)  To support these contentions, Plaintiff points to communications and

interactions via email, phone, and mail, that took place between herself, in Ohio, and Defendants,

in New Jersey, involving both her medical records and her pending New Jersey court cases.

(Doc. 76 at 38–45).

The communications and actions that Plaintiff highlights are not sufficient to establish that

these Defendants purposefully availed themselves to the privileges of conducting business in Ohio.

Plaintiff's relationship with many Defendants exists because medical records documenting her

medical care and commitment were created and stored in New Jersey.  Her relationship with the

remainder of Defendants exists because Plaintiff chose to file lawsuits and criminal complaints in

New Jersey.  (*See, e.g.*, Doc. 12-1 at 3.)  It was not Defendants reaching out to Ohio, but rather

Plaintiff choosing to move to Ohio, that made Defendants' communications to Ohio necessary.

Furthermore, from Plaintiff's Complaint it appears that it was Plaintiff, and not Defendants who

initiated many, if not all, communications requesting her medical records (*See, e.g.*, Doc. 5 ¶¶ 82,

88), and it was certainly Plaintiff who initiated her New Jersey lawsuit (Doc. 5 ¶ 81.)

Accordingly, the Court finds that the contacts Plaintiff cites are not of sufficient quality for even a

---

[11] For reasons described below, the Court will address Defendants Igne Plante, Karen M. Mahon, and Buckley and Theroux separately.

*prima facie* showing of purposeful availment.  Rather, with respect to due process considerations, the communications Plaintiff asserts are the type of random and attenuated contacts that the Supreme Court has found insufficient to establish personal jurisdiction.  *See Burger King Corp.*, 471 U.S. at 475 (1985).

The Court also finds personal jurisdiction lacking when applying the effects test. Although Plaintiff does allege that Defendants made some communications to Ohio, and that injury occurred in Ohio, the heart of Plaintiff's cause of action is in New Jersey.  Specifically, the focal points of Plaintiff's Complaint are the alleged actions Defendants took in New Jersey to falsify and exchange Plaintiff's medical records and obstruct her pending lawsuits.  *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (distinguishing *Calder* because "Ohio was not the 'focal point' of the press release" involved).  Furthermore, the sources of the controversy in this case, Plaintiff's medical records and pending lawsuits, are all located in New Jersey.  *See id.* at 1120 ("[T]he source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France.").  Although Defendants might have foreseen injury in Ohio, because they allegedly knew Plaintiff lived in the state, foreseeability alone is not enough to create personal jurisdiction.  *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)) ("The fact that the [the defendant] could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction.").  Furthermore, the Court finds this case distinguishable from *Neal* where the plaintiff's entire action was based on fraudulent communications that the defendant expressly directed at the forum state.  *Neal*, 270 F.3d at 331.  Here, Plaintiff chose to move to Ohio once her medical records and lawsuit were already in existence; Defendants did not expressly aim any

14

actions that led to Defendants' limited communications in Ohio.

### 2. Arising From

The second prong of the Sixth Circuit's due process test provides that "the cause of action must arise from the defendant's" contacts with the forum state. *Air Prods. & Controls*, 503 F.3d at 550 (internal quotation omitted). This factor is relatively lenient and "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002); *see also Air Prods. & Controls, Inc.*, 503 F.3d at 553. In other terms, the Court must determine "whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods. & Controls*, 503 F.3d at 553 ("[W]e have characterized this standard as a 'lenient standard' . . .").

Although the Court does not find that Plaintiff has satisfied this requirement for all Defendants, the Court does conclude based on a few statement in her Complaint, that at least some of Plaintiff's claims are connected with certain Defendants' communications to Ohio. For example, Plaintiff's causes of action involving her medical records, namely that Defendants obstructed her ability to seek medical care by withholding her records, are at least somewhat connected with several Defendants' communications to Ohio. Nevertheless, because the Court finds that the other due process requirements are not met, the Court finds it unnecessary to engage in an individual analysis of the sixty-five Defendants.

### 3. Reasonableness

The final prong "of the *Southern Machine* test mandates that the acts of the defendant or

consequences caused by the defendant must have a substantial enough connection with the forum

state to make the exercise of jurisdiction over the defendant reasonable." *Intera Corp.*, 428 F.3d

at 618 (internal quotation omitted). This prong "exists because 'minimum requirements inherent

in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction

even if the defendant has purposefully engaged in forum activities.'" *Nationwide Mut. Ins. Co. v.*

*Tamariz-Wallace*, No. C2-08-1148, 2009 WL 1850612, at *5 (S.D. Ohio June 19, 2009)

(quoting

*Burger King Corp.*, 471 U.S. at 477-78 (internal quotation omitted)). In making this

reasonableness determination, the Court "must consider several factors including the following:

(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in

obtaining relief; and (4) other states' interest in securing the most efficient resolution of the

controversy." *Id.* When the Plaintiff has failed to satisfy either of the first two prongs, "an

inference of reasonableness is not warranted." *Intera Corp.*, 428 F.3d at 618. Where the first

two prongs are met, however, "'an inference of reasonableness arises' and 'only the unusual case

will not meet this third criteria.'" *Air Prods. & Controls*, 503 F.3d at 554 (quoting *Theunissen v.*

*Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991)).

　　　　In this case, it would be unreasonable for this Court to exercise jurisdiction over

Defendants. It is true that Plaintiff has an interest in obtaining relief, and it would likely be most

convenient for her to seek relief in Ohio where she now resides. A number of other factors,

however, outweigh this interest. First, Defendants would be substantially burdened if they were

forced to litigate this case in Ohio. All seventy-seven Defendants are located in New Jersey.

Accordingly, all Defendants, and likely most if not all of the documents and witnesses Defendants

would require at trial, would have to travel to Ohio.  Furthermore, Defendants come from several different occupations and circumstances, such as physicians and court personnel, so the burden of litigating in Ohio would effect Defendants in a variety of ways.  The Sixth Circuit has made clear that specific jurisdiction may be "proper even when a defendant would be compelled to travel." *Intera Corp.*, 428 F.3d at 618.  Nevertheless, the Court cannot ignore the onerous burden that the numerous Defendants would face.

Second, the forum state, Ohio, does not have a strong interest in this case.  Although Ohio has some interest in this dispute because Plaintiff is currently a resident here, the Defendants lack of significant contacts with the state reduces that interest.  *Cf. Scotts*, 145 Fed. Appx. at 115 ("Ohio has an interest in resolving a suit brought by one of its residents against Defendants that purposefully availed themselves of acting in and causing consequences in Ohio.")  Furthermore, the incidents that Plaintiff's Complaint addresses primarily involve actions stemming from her involuntary commitment and lawsuits in New Jersey.  *See Intera Corp.*, 428 F.3d at 618 ("Plaintiffs' concession that Defendants [] did not commit their alleged deceptive acts within the geographic confines of [the forum state] appears to diminish the state's purported strong interest.").

Finally, and most convincing to the Court, the state of New Jersey has a strong interest in efficiently resolving this controversy.  This case involves Plaintiff's numerous accusations of impropriety against New Jersey doctors, hospitals, medical centers, lawyers, law firms, prosecutors, judges, and various other state employees.  Additionally, the case involves serious allegations of corruption within the New Jersey state-court system and New Jersey county prosecutor's offices.  Plaintiff's cause of action stems from events, including her involuntary

commitment and pending litigation, that occurred in New Jersey.  All Defendants are located in New Jersey, and Plaintiff lived in New Jersey at the time of her commitment and initial New Jersey lawsuit.  Under these circumstances, clearly New Jersey has an overwhelmingly stronger interest in resolving this controversy than Ohio.  It would, therefore, be unreasonable for this Court, sitting in Ohio, to exercise jurisdiction based on the state's relatively tenuous connections to this case.  Accordingly, even assuming Plaintiff had met the first two prongs of the *Southern Machine* test, which she has not, the Court finds that this is one of the unusual cases where it would simply be inconsistent with the notions of fair play and substantial justice for the Court to exercise jurisdiction.

C.  Defendants Igne Plante, Karen M. Mahon, and Buckley and Theroux

Defendants Igne Plante ("Plante"), Karen M. Mahon ("Mahon"), and Buckley and Theroux ("Buckley") require separate attention in considering personal jurisdiction.  According to the Complaint, Defendant Plante is a doctor at St. Francis Medical Hospital and treated Plaintiff during her involuntary commitment.  (Doc. 5 ¶¶ 32, 143.)  Defendant Buckley is a law firm that represents Plante, while Defendant Mahon is a member of the firm and Plante's attorney.  (Doc. 5 ¶¶ 33–34.)  A number of Plaintiff's assertions against Defendants Plante, Mahon, and the Buckley firm are similar to Plaintiff's accusations against other Defendants, including that they improperly exchanged and disclosed her medical records.  (*See, e.g.*, Doc. 5 ¶¶ 147–49.)  Nevertheless, Plaintiff also maintains that these three Defendants offered to sell Plaintiff her medical records around September 2008, after she had moved to Ohio.  (Doc. 5 ¶ 146.)  Plaintiff does not state any details regarding this offer, such as who initiated the contact, but does state that Defendants were aware that the records were being unlawfully withheld from her.  (*Id.*)

18

Because of the alleged offer to sell, the Court finds the need to analyze Plaintiff's argument against these Defendants with respect to purposeful availment.  Specifically, because Plaintiff contends that Defendants offered to sell her medical records while she was in Ohio, this attempted transaction creates a stronger connection with Ohio than the random communications that other Defendants had with the Plaintiff in Ohio.  Nevertheless, the Court also notes that Plaintiff's Complaint is ambiguous as to which party initiated the communications that led to the offer of sale and does not give details regarding the circumstances surrounding the offer.  (*See* Doc. 5 ¶ 146.)  Accordingly, the Court is not convinced Plaintiff has met her *prima facie* burden of establishing, with reasonable particularity, that the communications were a result of Defendants purposefully directing their conduct toward Ohio, rather than Plaintiff's own unilateral decision to move to Ohio.

Even assuming that Plaintiff's bare factual allegations against Defendants Plante, Mahon, and Buckley rise to the level of purposeful availment, the Court still finds that exercise of jurisdiction over these Defendants would be unreasonable and against the due process requirements of fair play and substantial justice.  Specifically, for the reasons described above, Defendants would face a significant burden if forced to litigate in Ohio.  Although Ohio would have some interest in resolving the dispute, the interest of New Jersey would remain much stronger, as the majority of Plaintiff's claims against these Defendants still arise from alleged misconduct involving medical records created and located in New Jersey.  Finally, New Jersey also has an interest in the efficient resolution of this controversy because of the numerous New Jersey Defendants involved.  Therefore, the Court finds that Plaintiff has also failed to meet the due process requirements for Defendants Plante, Mahon, and Buckley.

19

## IV.  MOTION TO AMEND COMPLAINT

Plaintiff has requested leave to file her Proposed Second Amended Complaint, which she attached to her Motion.  (*See* Doc. 77-3; Doc. 77-4.)  Plaintiff's Proposed Second Amended Compliant alters two paragraphs.  Specifically, Plaintiff traces the elements of the *Southern Machine* test and then states that Plaintiff satisfies these elements because Defendants communicated with her while she was in Ohio via telephone, email, and mail.  (Doc. 77-3 ¶¶ 1, 3.)

A plaintiff is generally permitted to "amend [her] pleading once as a matter of course." Fed. R. Civ. P. 15(a)(2).  "Otherwise, the complaint may be amended 'only with the opposing party's written consent or the court's leave,' and a 'court should freely give leave when justice so requires.'"  *Colvin v. Caruso*, 605 F.3d 282, 295 (6th Cir. 2010) (quoting Fed. R. Civ. P. 15(a)(2)).  The Court "may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile."  *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006) (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)).

In the instant case, allowing Plaintiff to amend her Complaint would be futile. Specifically, the Court has considered the alterations Plaintiff made in the Proposed Amended Complaint, and still finds that it lacks personal jurisdiction over the Defendants for the reasons described above.  Plaintiff's bare recitation of the personal jurisdiction standard, without more, including facts related to Defendants' contacts, is not enough to overcome this deficiency. Additionally, the Court has already considered the communications described in the Proposed Amended Complaint in deciding that Plaintiff has failed to meet the due process requirement for personal jurisdiction.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not satisfied her burden to establish personal jurisdiction.  Accordingly Defendants' Motions to Dismiss (Docs. 11, 12, 32, 56, 59, 60) are **GRANTED** and Plaintiff's claims against the moving Defendants are **DISMISSED** with prejudice.  Plaintiff's Motion for Leave to Amend the Complaint and File the Second Amended Complaint is **DENIED**.  (Doc. 77.)

     **IT IS SO ORDERED.**


                                **/S/ George C. Smith**            
                                **GEORGE C. SMITH**
                                **UNITED STATES DISTRICT JUDGE**